**"O"**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| RODNEY WILLIAM VERNON, ) | Case No. SACV 05-0471-MLG |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the ) | |
| Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
|_____ ) | |

Plaintiff Rodney William Vernon seeks judicial review of the Commissioner's final decision denying his application for Social Security Disability Insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. 42 U.S.C. § 1381 *et seq.* For the reasons stated below, the Commissioner's decision shall be affirmed.

## I.   Background

Plaintiff was born on February 24, 1955 and has a high school education.  He has worked as a managing massage therapist and a postal

carrier. He alleges disability beginning on November 19, 1991, due to impairments effecting use of his hands, swallowing, breathing, and walking, as well as problems with his circulation, vision and heart. He also claims to suffer from concentration. (AR at 700).

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income benefits on October 14, 1994, which was denied initially and upon reconsideration. (AR at 471, 497). Plaintiff requested and received a hearing, and an unfavorable decision issued on March 27, 1997. (AR at 462). Plaintiff filed another application for Supplemental Security Income benefits on March 7, 2000, which was denied initially and upon reconsideration. (AR at 74). An administrative hearing was held on January 9, 2002, before Administrative Law Judge ("ALJ") F. Keith Varni. (AR at 28). ALJ Varni issued an unfavorable decision on January 23, 2002, finding that although Plaintiff established a severe impairment of the musculoskeletal system, this impairment did not meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ also found that Plaintiff did not have a severe mental impairment. Although the ALJ found that Plaintiff was unable to return to his past work, he found that Plaintiff had the residual functional capacity to perform a full range of light work and that Medical Vocational Rules 202.21 and 202.20 directed a conclusion of "not disabled." (AR at 19).

On July 12, 2002, the Appeals Council granted review of this decision and affirmed the ALJ's findings. (AR at 457). However, Plaintiff was given 40 days in which to file new evidence relating to his claim for DIB. On October 18, 2002, Plaintiff filed yet another application for Supplemental Security Income. (AR at 753). Uponfinal review of the January 23, 2002 denial, the Appeals Council issued an

2

1  unfavorable decision on January 31, 2003. (AR at 5). On April 14, 2003,
2  Plaintiff filed another application for Disability Insurance Benefits.
3  (AR at 756).

4      Plaintiff commenced a civil action for judicial review that
5  resulted in a stipulated Order and Judgment of Remand on June 8, 2004 by
6  this Court. (AR at 720, 722).  By stipulation, the Court directed the
7  ALJ on remand to conduct a new hearing, consider the evidence of record
8  including any new evidence, reconsider the applicability of the
9  presumption of continuing nondisability under *Chavez v. Bowen*, 844 F.2d
10 691 (9th Cir. 1988), undertake a full sequential evaluation of the
11 claimant's impairments during the period under consideration, and
12 evaluate all of the claimant's impairments in terms of their severity
13 including his obesity under Social Security Ruling 02-01p.  On August 4,
14 2004, the Appeals Council remanded the case to the ALJ, directing the
15 ALJ to address the above issues as well as the significance of the
16 claimant's reported need for special services in order to attend
17 college.  (AR at 725).

18     Another hearing was held on March 3, 2005, again before ALJ F.
19 Keith Varni.  Plaintiff, a medical expert, and a vocational expert all
20 appeared and testified at the hearing. Plaintiff testified that he had
21 continuous pain in his wrists, chest, back, neck and shoulder and has
22 difficulty breathing. He testified that he crushed both wrists in a
23 work-related accident and cannot perform his past work because of pain
24 in his wrists. (AR at 1233).  He testified that at times he felt
25 "totally exhausted and drained" and that his concentration level "comes
26 and goes." (AR at 1230-31). He stated that he keeps putting on weight
27 because of the diabetes medicine, and that he experiences frequent
28 muscle spasms.  He attended the hearing in a wheel chair.  (AR at 1233).

ALJ Varni issued an unfavorable decision on March 25, 2005 (AR at 1216, 697).   He incorporated his prior January 23, 2002 decision by reference, and made additional findings to address the directives of the Appeals Council and this Court. (AR at 701).   The ALJ found that Plaintiff has level III obesity with moderate degenerative changes in the lumbar spine, mild degenerative changes in the cervical spine, hypertension, mild ischemic heart disease, asthma, gastresophageal reflux disease, possible diverticulitis, a history of right wrist injury, a history of surgery on the right knee, a history of vision problems, and a history of reactive depression.   In combination, the ALJ found these impairments to be "severe" under the regulations.   However, the ALJ found that even in combination Plaintiff's impairments did not meet or equal one the impairments in the Listings. (AR at 702).   The ALJ further found that the record did not establish any marked or extreme limitation of function.   The ALJ concluded that Plaintiff had the following residual functional capacity: lift and/or carry ten pounds frequently, and twenty pounds occasionally; stand and/or walk four hours per workday; sit six hours per work day with customary breaks; no significant stooping, kneeling, crouching, or crawling; no repetitive handling, torquing or grasping greater than ten pounds with the right hand and only occasional fingering; no use of vibrating tools; and no significant exposure to temperature extremes, dust, fumes, or similar environments.

The ALJ also found that Plaintiff could not return to any of his past relevant work.   Relying on the testimony of a vocational expert and Medical-Vocational Rules 202.20, 202.21. 202.13, and 201.14,[1] the ALJ

---

[1]   20 C.F.R., Part 404, Subpart P., App. 2.

4

found that Plaintiff was capable of making a vocational adjustment to other work including cashier, counter clerk, information clerk and ticket worker.    (AR at 704-05). The ALJ noted that there was no established need for any assistive devices for ambulation and no expression of total disability from any current treating source. Combined with the  medical evidence, this led the ALJ not to credit all of the Plaintiff's subjective complaints of pain and limitation. (AR at 702-03). The ALJ found that Plaintiff was not disabled. (AR at 706).

The Appeals Council denied review and Plaintiff commenced the present action.  Plaintiff stipulates that the ALJ fairly and accurately summarized the material medical evidence and testimony of record with the exception of those portions as addressed in Plaintiff's Issues and Contentions.  Defendant submits that the ALJ sufficiently summarized the evidence of record. (Joint Stipulation "JS" at 3).  Thus, the Court will proceed with the analysis and state additional background information as necessary to analyze Plaintiff's contentions.

**II.  Plaintiff's Claims**

Plaintiff asserts the ALJ erred by:(1) not considering the a form prepared by one of Plaintiff's friend;(2) misrepresenting Plaintiff's testimony and making improper credibility findings; (3) inappropriately considered the opinion of the examining physician; (4) posing an incomplete hypothetical question to the vocational expert; and (5) improperly developing the record. (JS at 3-4).  Defendant contends that the ALJ's decision is free from error and supported by substantial evidence.   This matter is ready for decision.

\\

\\

**III. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision denying benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

**IV. Discussion**

    **A.   The ALJ Properly Considered the Evidence from the Plaintiff's Friend, Stacy Fregia**

Plaintiff asserts that the ALJ improperly failed to consider the Daily Activities Questionnaire that Plaintiff's friend Stacy Fregia completed in support of Plaintiff's claim for disability. Plaintiff contends that this omission violated the Court's order to "conduct a hearing where all evidence of record and any new evidence will be considered." (JS at 4).

\\

6

Ms. Fregia's questionnaire made three assertions Plaintiff considers important. First, in response to a question about grooming habits, Ms. Fregia stated, "He used to be one of the neatest dressed men I know, but now he is reduced to pullover and jeans and usually sandals because of his arms and the fact that he can no longer do laundry. Also was clean and shaven, but no longer, and usually a beard. (JS at 5; AR at 124). Second, in response to a question about social activities, Ms. Fregia noted that Plaintiff "used to have a life that was very full and active, now he has none." (JS at 5; AR at 127). Finally, with regard to Plaintiff's concentration problems, she stated that he is "often confused and can't remember." (JS at 5; AR at 127). Plaintiff contends that these written statements, buried in the administrative record, reflect significant functional limitations and therefore the ALJ's failure to evaluate them constitutes material error. (JS at 6).

"Lay *testimony* as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)(emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512. Unlike lay *testimony*, there is no controlling precedent requiring an ALJ to explicitly address lay *written* statements, such as the questionnaire in this case. Moreover, it is clear that an ALJ is not required to discuss all evidence in the record in detail. *Howard v. Barnhart***,** 341 F.3d 1006, 1012 (9th Cir. 2003).

The Court finds that the ALJ did not err by failing to explicitly reject Ms. Fregia's brief and vague written questionnaire responses.

Ms. Fregia's statements were in substance duplicative of Plaintiff's own testimony, which the ALJ gave clear reasons for rejecting.

Moreover, Ms. Fregia's statements, even if credited, do not convey much information relevant to Plaintiff's disability claim. The statements were vague and of unclear significance. For example, that Plaintiff now dresses in jeans and sandals instead of neater clothing is not clearly significant. Neither is the fact that he now wears a beard instead of fully shaving. Ms. Fregia does not give examples of how the Plaintiff's life has become less active or what he is confused about. Her statements are vague and conclusory. Without an even base level of detail, it is not clear what the ALJ could have addressed. The Court finds that the ALJ did not err in failing to specifically address Ms. Fregia's written statements in the questionnaire.

**B.   The ALJ's Assessment of Plaintiff's Credibility Was Substantially Supported**

Plaintiff contends that the ALJ misrepresented his testimony regarding his need for a wheel chair and about the assistance he receives as a disabled student in order to attend college. Furthermore, Plaintiff contends that the ALJ failed to identify which portion of Plaintiff's testimony about his pain was not credible, and what evidence undermined Plaintiff's complaints.

With respect to the wheel chair, the ALJ noted, "[Plaintiff] appeared in a motorized wheelchair, which he said some government agency had given him, but he provided no explanation of how it had been authorized, and as noted the medical expert said there was no documented need for it, as did the recent medical examiner." (AR at 703). In his testimony, Plaintiff was asked how long he had used the wheelchair and whether it was prescribed, and he testified that it was prescribed in

8

March 2004 in a followup appointment after his recent heart attack and auto accident. (AR at 1227). The Court acknowledges that the ALJ mischaracterized Plaintiff's response by asserting that Plaintiff "provided no explanation" of how the wheelchair had been authorized. Plaintiff was only asked when the wheelchair was prescribed, and for what reason, and he gave complete answers. The ALJ did not ask who prescribed the wheelchair, or how it had been authorized.

However, it is also true that the record provided by Plaintiff failed to show that Plaintiff's motorized cart was medically necessary. Indeed, two medical sources specifically asserted that it was *not* medically necessary. (AR at 1055-60).   And, importantly, Plaintiff failed to submit proof that the device was medically necessary, or any evidence at all that the device was prescribed by his treating physician as is alleged in the Joint Stipulation. (AR at 10).

It was therefore not unreasonable for the ALJ to omit the use of the wheel chair in evaluating Plaintiff's RFC and to view the testimony relating to the wheelchair as weighing against the Plaintiff's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistencies between Plaintiff's testimony and conduct may be used to discredit subjective complaints); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986) (complaints may be rejected when completely unsupported by medical evidence); *see also* 20 C.F.R §§ 404.929(b), 416.929(b)(medical evidence must reasonably support subjective claims).

With respect to the disabled student's program, the Court again agrees that the ALJ mischaracterized Plaintiff's testimony, but does not agree with the Plaintiff that this is material error.   The ALJ asserted, "[Plaintiff] admitted that he had been attending California Polytechnic Institute in Pomona, California, for the past three years and was taking

9 units at the time of the hearings, but he attempted to portray a picture of his doing absolutely nothing and having everything done for him by aides provided by the school." (AR at 703). In fact, the Plaintiff testified that the disabled student's program provides a note taker, a writer, voice assistive technology, special seating arrangements and other accommodations. When asked if "the assistants do all the work," Plaintiff testified that he listens and figures things out and then reports his answers and interpretations to the assistants. (AR at 1229-30). The Court agrees that it is inaccurate for the ALJ to represent this testimony as "a picture of his doing absolutely nothing and having everything done for him by aides." (AR at 703). Listening, thinking, figuring out problems and providing answers are the most substantive student activities and are not diminished by the use of aids in a disabled students program.

The court finds that while certain of the reasons given for rejecting Plaintiff's credibility are dubious, that rejection is nevertheless supported by substantial evidence. Under the governing legal standard, unless there is evidence that a claimant is malingering, the ALJ can only reject the claimant's subjective testimony regarding the severity of his symptoms by making "specific findings stating clear and convincing reasons for doing so". *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 917-18 (9th Cir. 1993). Under this standard, it is not sufficient for the ALJ to make general findings about the claimant's testimony. *Dodrill*, 12 F.3d at 918. Rather, the ALJ must specify which testimony is not credible and state the specific evidence that suggests the testimony is not credible. *Id.* In determining credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as inconsistent statements,

10

1    unexplained failures to seek treatment, and the daily activities of the
2    claimant.  *Smolen*, 80 F.3d at 1284.   The ALJ must also consider the
3    "observations of treating and examining physicians and other third
4    parties regarding . . . the nature, onset, duration, and frequency of
5    the claimant's symptom; precipitating and aggravating factors;
6    functional restrictions caused by the symptoms; and the claimant's daily
7    activities."  *Id*.

8        The ALJ provided a number of valid reasons, referencing specific
9    testimony, for discounting Plaintiff's credibility. This constitutued
10   substantial evidence to reject the Plaintiff's account of the severity
11   of his limitations. The ALJ noted that there was no expression of
12   disability from any current treating source, and the most recent
13   evaluations indicated that Plaintiff was not as limited as he claimed to
14   be. (AR at 703, 1055-60; 1065-71; 1219-22).  Plaintiff was never found
15   to require an assistive device, but traveled around on a motorized cart.
16   (AR at 703). The ALJ found that Plaintiff's hand complaints were not
17   noted in 2002, and were mild in 2003 and 2004, with no restriction of
18   wrist motion and only mild pain-related weakness in the right hand. (AR
19   at 702).  Two examining physicians found Plaintiff capable of a full
20   range of light work. A consultative psychiatric examiner found no
21   psychiatric limitations. Plaintiff had never received any psychiatric
22   treatment of any type. (AR at 702).  No medical evidence indicated
23   serious disturbance of gait or station, and only one upper extremity was
24   found to be seriously limited by a physician. (AR at 702). Finally, the
25   ALJ noted that no treating or examining source found Plaintiff's obesity
26   to be a marked or extreme impairment. (AR at 703).

27       The Court finds that these observations constitute the specific
28   findings required to reject Plaintiff's subjective testimony regarding

1   the severity of his symptoms.

2      **C.   The ALJ Appropriately Considered the Opinion of Examining**
3           **Physician Brian Huh**

4      Plaintiff asserts that the ALJ erred by failing to include or
5   reconcile the more restrictive residual functional capacity found by Dr.
6   Huh. (JS at 17; AR at 432). Dr. Huh opined that the Plaintiff "is able
7   to lift and carry at least 10 pounds occasionally and routinely less
8   than 10 pounds." (AR at 432). In addition, he further limited the
9   Plaintiff to only occasional reaching, handling, feeling, grasping, and
10  fingering. (AR at 432). This RFC is more restrictive than that found by
11  the ALJ, which indicated that Plaintiff could lift 20 pounds
12  occasionally and 10 pounds frequently, and which omitted and "reaching"
13  or "feeling" restrictions. Plaintiff contends that the ALJ failed to
14  reconcile these significant differences between his own assessment and
15  that of examining physician, Brian Huh. (JS at 17).

16     An ALJ must provide clear and convincing reasons to reject an
17  uncontradicted opinion of an examining or treating physician, and
18  specific and legitimate reasons if the opinion of the examining or
19  treating physician is contradicted by another doctor. *See Lester v.*
20  *Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

21     In this case, the ALJ did specifically address the findings of Dr.
22  Huh. In his opinion, the ALJ expressly incorporated the findings he made
23  in his previous decision issued on January 23, 2002 (AR at 14-20), and
24  noted that his March 2005 decision was a supplement to the 2002
25  decision. (AR at 701). In the 2002 decision, the ALJ clearly addressed
26  the January 2001 findings of Dr. Huh. (AR at 16). The ALJ noted that Dr.
27  Huh thought the examination of Plaintiff was very difficult, that
28  Plaintiff exaggerated his symptoms, and that Plaintiff's lack of atrophy

12

in his hands indicated greater usage than his reported ability permitted. (AR at 18; AR at 432-33). The Court finds that these findings by the ALJ constitute sufficient evidence to support a rejection of Dr. Huh's conclusions.

**D.    The ALJ posed a Complete Hypothetical to the Vocational Expert**

Plaintiff asserts that the ALJ erred by omitting from hypothetical to the Vocational Expert the restrictions assessed by Dr. Huh, Plaintiff's subjective pain limitations, and his use of a wheelchair.

Under the governing legal standard, "[i]n order for the testimony of a [VE] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotation marks omitted) (citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). However, the ALJ is not obliged to incorporate restrictions that were not supported by the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("The ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."). As discussed above, the ALJ's rejection Dr. Huh's conclusions, Plaintiff's allegations of extreme pain, and the necessity of a wheel chair were all supported by substantial evidence. Therefore, the ALJ did not err by omitting these restrictions from the hypothetical to the vocational expert.

**E.    The ALJ Properly Developed the Record**

Finally, the Plaintiff contends that the ALJ erred by failing to request more legible treating records from Plaintiff before ordering and relying upon consultative medical examinations. The ALJ asserted in his

13

1   opinion, "Because of illegibility and the lack of details in the recent

2   treatment notes, consultative medical examinations were obtained in the

3   course of the intervening claims in this case and upon remand." (AR at

4   702).   The Plaintiff complains that this holding was made without

5   letting the Plaintiff know that certain medical records were illegible,

6   and that the Plaintiff would have gladly tried to obtain a more legible

7   copy of the exhibits to which the ALJ referred. Plaintiff asserts that

8   it is "patently unfair" for the ALJ to not even document which illegible

9   documents he was referring to in his decision. (JS at 23).   This

10  omission, Plaintiff contends, constitutes a material failure to develop

11  the record requiring remand. (JS at 23).

12      Both the disability benefits claimant and the ALJ bear a regulatory

13  responsibility for developing the evidentiary record.  The claimant must

14  produce medical evidence showing that she has an impairment, and how

15  severe that impairment is during the time she claims she is disabled. 20

16  C.F.R. §§ 404.1512(c), 416.912(c).  Before deciding that a claimant is

17  not disabled, the ALJ must develop a claimant's complete medical history

18  for at least the twelve months preceding the month in which the claimant

19  files her application.   The ALJ must make every reasonable effort to

20  help the claimant get medical reports from the claimant's medical

21  sources when the claimant gives permission to request the reports. 20

22  C.F.R. §§ 404.1512(d), 416.912(d).  Moreover, the ALJ's special duty to

23  fully and fairly develop the record and to assure that the claimant's

24  interests are considered exists even when the claimant is represented by

25  counsel. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

26      The Court finds that the ALJ did not fail to develop the record in

27  this case.   Plaintiff possessed the same evidence as the ALJ, and

28  nothing prevented him from submitting more legible records if he chose.

14

Plaintiff does not point to any notes or findings in the treating records that contradict any of the ALJ's findings. It is unclear if more legible records exist, or whether they would contain anything of import. Plaintiff leaves these important questions unanswered. The Court finds that the ALJ did not fail to develop the record by failing to seek out more legible treating physician records.

**V.    CONCLUSION**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case dismissed with prejudice.

DATED: March 2, 2006            */s/ Marc L. Goldman*

_____
MARC L. GOLDMAN
United States Magistrate Judge